# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:  Case No. A09-00623-DMD | Chapter 11 |
| ADAK FISHERIES, LLC, | |
| Debtor. | |

**Filed On
2/16/10**

| | |
|---|---|
| INDEPENDENCE BANK, | Adv. No. A09-90031-DMD |
| Plaintiff, | |
| v. | |
| ADAK FISHERIES, LLC, an Alaska limited liability company; ALEUT ENTERPRISE, LLC, an Alaska limited liability company; ALEUTIAN SPRAY FISHERIES, INC., a Washington corporation; PACIFIC PELAGIC GROUP, LLC, a Washington limited liability company and ADAK SEAFOOD, LLC, a Washington limited liability company. | |
| Defendants. | |

## <u>MEMORANDUM RE JURISDICTION</u>

Pending before the court is defendant Aleutian Spray Fisheries' motion to dismiss.  Aleutian Spray has requested dismissal only as to itself and defendant Pacific Pelagic Group.  Defendant Aleut Enterprise, LLC, has filed a joinder to that motion, but requests dismissal as to all defendants.  The motion and joinder are opposed by plaintiff Independence Bank and defendant Adak Seafood, LLC.  I conclude dismissal of this action,

including the cross-claim filed by defendant, Adak Seafood, LLC, against Adak Fisheries, is appropriate.

Case Background

This bankruptcy proceeding has had a short, but very litigious, existence. The debtor, Adak Fisheries, LLC ("Adak"), was a fish processor on Adak Island, a very remote island on the far reaches of the Aleutian Chain. Adak operated a fish processing plant on Adak Island under the terms of a lease with Aleut Enterprise, LLC. The initial term for the lease was from January 1, 2006, through December 31, 2009. Adak had the option to extend the lease for five additional five-year terms, by giving written notice to Aleut Enterprise at least 120 days before the expiration of the initial term or any extended term.

In 2008 and 2009, Adak's operations were not profitable. Adak filed for chapter 11 relief on September 11, 2009. At the time the petition was filed, Adak was in default under the terms of the lease and had not given written notice to Aleut Enterprise opting to extend the lease.[1] On September 16, 2009, Adak filed a motion to use cash collateral, and on September 17, 2009, Adak filed a motion to reject its lease with Aleut Enterprise. Adak's major secured creditor, Independence Bank, opposed both motions. The bank also filed a motion to convert the bankruptcy case to chapter 7 on September 15, 2009,

---

[1] Transcript of Proceedings from Telephonic Hearing on Interim Use of Cash Collateral, at 43, filed Oct. 6, 2009 (Docket No. 87), in Main Case No. A09-00623-DMD, *In re Adak Fisheries, LLC*.

2

and a motion to approve a sale of Adak's assets to Adak Seafood, LLC, on September 18, 2009.[2]  The bank moved to have both motions heard on shortened time.

The same day that the bank's motion to sell was filed, a hearing was held on Adak's motion for interim use of cash collateral.  At this hearing, Adak presented testimony from John Young, an attorney who holds an equity interest in the debtor and has been involved with Adak for approximately four years.  Young explained the reasons for filing chapter 11 and how Adak intended to proceed.

> Well, the purpose of the Chapter 11 is to engage in an orderly shut-down of the present operation.  As the court is aware, there are significant unsecured – there's significant unsecured debt out there, Chapter 11 will provide – or, a bankruptcy will provide closure for the creditors.  I'd like to see this plant survive and continue on, it's vital to the community of Adak, it's very important as an operating entity.  The goal here was to try to preserve the assets and see the processing assets sold in place so that the plant could continue in operation in the hands of a solvent company that could make a go of it.  So all of the involvement so far has been aimed towards preserving the assets and trying to arrange an orderly sale of them.[3]

---

[2] This motion was brought without Adak's joinder or consent, and the bank had no standing to bring it.  *See* 11 U.S.C. § 363(b), which authorizes a trustee to "use, sell, or lease" property of the estate, and 11 U.S.C. § 1107(a), which gives a debtor in possession all the rights (other than compensation under § 330), functions and duties of a trustee.  The bank is neither a trustee nor a debtor in possession.

[3] Transcript, at 43.

3

Young testified that Adak's lease with Aleut Enterprise would, as he understood it, expire by its terms at the end of 2009.[4]  He confirmed that the lease was renewable at the option of the tenant, but said it was in default and Adak was not in a position to renew it.[5]  As for Adak's plans to sell the plant, Young testified:

> Well, the best return for the company will be to sell the assets in place so that the plant can continue in operation.  The assets could be liquidated – and when I speak of assets I'm talking now of the – the hard assets, the processing equipment at Adak.  It has some liquidation value but its liquidation value is limited because it's equipment that's very site-specific.  It was designed for this particular facility.  It will not – it's not easily transformed into equipment that can be used in another facility.  So – and, of course, the costs of removing the assets at Adak are exceedingly high.  So the best – the best result for the company would be to liquidate those assets in place as a going – not a going concern, but so that the plant could continue on as an operating entity.  That will require a new lease with the Aleuts – with Aleut Enterprise Corporation, it is anticipated that any buyer will come in and negotiate a new lease.[6]

Young was asked whether the plant should be sold with or without Adak's assumption and assignment of the lease.  He responded that a sale without assignment of the lease would be preferable.

---

[4] *Id.*

[5] *Id.*

[6] Transcript, at 44.

4

> Well, it is preferable, and – because the present
> lease with [Aleut Enterprise] is not desirable from
> the tenant's point of view.  It has some – it has
> some provisions in it which almost guarantee that
> this plant will not be an economic success, so any
> – any operator that will try to make a go of this
> operation is going to have to come in and
> renegotiate that lease on more favorable terms or
> it's not going to be possible to operate.[7]

At the conclusion of the hearing, Independence Bank agreed to Adak's interim use of cash collateral.[8]

On October 9, 2009, Adak filed a motion to sell the plant free and clear of all liens except the lien of Independence Bank.[9]  Adak proposed selling the plant facility, with its associated equipment and assets, to Adak Seafood, LLC, for $488,000.00 cash plus assumption of the bank's secured debt of approximately $6.7 million.  Several objections to the motion were filed, including one filed by Aleut Enterprise.[10] Aleut Enterprise noted that the proposed sale was conditioned upon assumption of its lease with Adak.  It took the position that the lease had either terminated pre-petition or would expire by its own terms on December 31, 2009.  Aleut Enterprise also observed that the debtor had not moved to assign the lease and, in fact, had no funds to cure the pre- and post-petition defaults as required

---

[7] *Id.* at 45.

[8] Pro. Memo. entered Sept. 18, 2009 (Docket No. 44), in Main Case No. A09-00623-DMD, *In re Adak Fisheries, LLC.*

[9] App. to Sell Adak Plant Free and Clear of Liens, filed Oct. 9, 2009 (Docket No. 104), in Main Case No. A09-00623-DMD, *In re Adak Fisheries, LLC.*

[10] Aleut Enterprise's Obj. to Debtor's Mot. to Sell Adak Fish Plant, filed Nov. 5, 2009 (Docket No. 140), in Main Case No. A09-00623-DMD, *In re Adak Fisheries, LLC.*

5

under § 365(b).   According to Aleut Enterprise's calculations, $2,253,027.61 would be required to cure these defaults.[11]

Independence Bank filed additional motions in the bankruptcy case.  On September 16, 2009, it filed a motion for a Rule 2004 examination of Matt Tischer, Adak's chief financial officer.  On September 30, 2009, it filed a motion for allowance of credit bid and sought to have this motion heard on shortened time.[12]  On October 6, 2009, it filed a motion to compel John Young's attendance at hearings scheduled for October 7, 2009, again with a motion to shorten time.  The bank filed a motion for Rule 2004 examination of Aleutian Spray Fisheries, Inc., on October 12, 2009, and a motion for relief from stay on October 21, 2009.

Hearings on Adak's motion to sell the plant, motion for continued use of cash collateral and to reject the Aleut Enterprise lease were held on November 9 and 10, 2009. The preliminary hearing on Independence Bank's motion for relief from stay, as well as its motions to convert to chapter 7 and to permit it to enter a credit bid, were also heard on these two dates.  At the conclusion of the November 10th hearing, the parties went on record with the terms of a sale.  A stipulated order authorizing sale of the plant to Adak Seafood was submitted by the parties and entered on November 12, 2009.[13]   The sale price was

---

[11] *Id.* at 5.

[12] This motion was premature, as the debtor had not yet filed its motion to sell estate assets and, as noted above, the bank had no standing to bring a motion to sell the Adak plant.

[13] Order Granting Debtor's App. to Sell Adak Plant Free and Clear of Liens, entered Nov. 12, 2009 (Docket No. 149), in Main Case No. A09-00623-DMD, *In re Adak Fisheries, LLC.*

6

$485,000.00, plus Adak Seafood's assumption of the entire obligation owed to Independence Bank.[14]  The sale rendered the bank's motions to convert, to enter credit bid, and for relief from stay moot.  The debtor withdrew its motion to reject the Aleut Enterprise lease, with prejudice, and transferred its interest in the lease to the buyer, Adak Seafood, LLC, subject to the claims and causes of action asserted in this adversary proceeding.[15]  The transfer was not an assumption and assignment of the lease under § 365, however.[16]

Buyer Adak Seafood was to pay Aleut Enterprise $250,000.00.[17]  Of this amount, $138,108.16 represented the minimum annual rent due Aleut Enterprise for calendar year 2009.  The balance represented payment for property damage.  This payment satisfied in full Aleut Enterprise's motion to compel payment of administrative rent.  Adak Seafood was also to escrow $150,000.00, which sum represented six months of the minimum annual rent due Aleut Enterprise under the lease for the 2010 calendar year.[18]  The order further specified, however,

> 8.  None of the foregoing payments to Aleut Enterprise, LLC, or other provisions of this Order concerning the rights and liabilities of Aleut Enterprise, LLC, with respect to the Aleut Lease shall be deemed a waiver of any claim, right, defense or position taken or asserted by

---

[14] *Id.* at 3, ¶ 10.

[15] *Id.* at 2, ¶ 4.

[16] *Id.*

[17] Order Granting App. to Sell (Docket No. 149), at 2, ¶ 5.

[18] *Id.* at 2-3, ¶ 6.

7

> Aleut Enterprise, LLC against any party, nor
> deemed an adjudication of any substantive or
> procedural or other right, claim or liability of
> Aleut Enterprise, LLC with respect to the Aleut
> Lease.[19]

The sale was free and clear of all liens of entities *other than* Independence Bank and creditors holding perfected security interests in titled motor vehicles. After closing the sale, Independence Bank would have "no claim or lien against the Debtor, or be entitled to any other relief against the Debtor, save for such declaratory relief as may be ordered" in this adversary proceeding.[20] The bank's security interests against the assets and property being sold would continue in those assets in accordance with applicable nonbankruptcy law.[21] Further, the automatic stay was lifted with respect to the Aleut Lease, but again without prejudice to the claims asserted in this adversary proceeding.[22] Finally, the order provided:

> 16.   Debtor has demonstrated sound
> business purpose and justification, and
> compelling circumstances, for the proposed sale
> pursuant to 11 U.S.C. Section 363(b) prior to, and
> outside, a plan of reorganization, . . . .
>
> . . . .
>
> 19.   Debtor will execute all other
> documents and take all other actions necessary to
> effectuate the purposes of this order and the

---

[19] *Id.* at 3, ¶ 8.

[20] *Id.* at 4, ¶ 13.

[21] Order Granting App. to Sell (Docket No. 149), at 4, ¶ 15.

[22] *Id.* at 4, ¶ 14.

[Asset Purchase Agreement], including a transfer
of permits and authorizations.

. . . .

21.  This court shall retain jurisdiction to
resolve any disputes arising under this Order.[23]

Independence Bank filed the instant adversary proceeding on October 15, 2009,

six days after Adak had filed its motion to sell.[24]  Adak Seafood LLC was joined as a party

defendant on January 4, 2010.[25]  The bank's initial complaint sought declaratory and other

relief, and contained five counts.  Because of the jurisdictional issues which have been raised

here, the complaint's allegations and counts will be discussed in detail.

The bank alleges it has 3 loans outstanding with Adak; the first made in

February, 2007 (for $4.3 million), the second in August, 2008 (for $1.5 million), and the third

in February, 2009 (for $1.65 million).  All loans are secured by Adak's assets, including the

Adak/Aleut Enterprise lease.  The bank alleges Adak was acquired by defendants Aleutian

Spray Fisheries, Inc., and/or Pacific Pelagic Group, LLC, in violation of the terms of its

loans.  The bank also notes, however, that Aleutian Spray "allegedly" had the right to take

over control of Adak in certain circumstances pursuant to an agreement entered in June, 2006

(prior to the date of the bank's first loan).[26]  The bank alleges Adak lacks funds to continue

---

[23] *Id.* at 5-6.

[24] Docket No.1.

[25] Docket No. 73.

[26] Complaint (Docket No. 1), at 8, ¶ 30.

9

to pay creditors, that all its loans are currently in default, and that Adak has attempted to sell collateral in violation of its security agreements.  The bank also alleges that Aleut Enterprise sent "purported" notices of default to Adak in July, 2009, and August, 2009,[27] and that in August, 2009 and early September, 2009, Adak wrongfully failed to exercise its option to extend the lease.[28]  These actions all occurred prior to the date Adak filed its chapter 11 petition on September 11, 2009.

Count I of the bank's complaint seeks a declaratory judgment and injunctive relief.  Specifically, the bank seeks a judgment declaring that, under state law (1) the Adak/Aleut Enterprise lease is a legally valid, binding and enforceable agreement until such time as the bank's obligation is paid in full; (2) that Adak and Aleut Enterprise have intentionally and willfully failed to notify the bank of alleged defaults under the lease, rendering the purported defaults void and without legal effect; (3) that any adverse actions taken by Aleut Enterprise or Adak without the bank's written approval or consent are void and without legal effect; (4) that the alleged termination of the lease prior to the commencement of the chapter 11 case is void and without effect; and (5) that any rejection of the lease in the chapter 11 case is adverse to the interests of the bankruptcy estate and its creditors.  The bank also asks for temporary and permanent injunctions prohibiting the termination, rejection, alienation, etc., of the lease, without the express consent of the bank or court approval of a § 363(m) sale, including the lease.  It also asks for a mandatory

---

[27] *Id.* at 10, ¶ 36 and 11, ¶ 39.

[28] *Id.* at 12, ¶ 41.

10

injunction compelling Adak to exercise its option to extend the lease beyond its initial term and compelling Aleut Enterprise to accept the exercise of such option.  Finally, the bank asks for an award of punitive damages due to the defendants' "wanton, willful and intentional" breach, plus its attorney's fees and expenses, and such other relief as the court deems to be fair and reasonable.

The remaining four counts of the bank's complaint are for breach of contract (Count II), alleged breach of fiduciary duty (Count III), civil conspiracy (Count IV), and intentional interference with contractual relationships (Count V).  These last four counts implicate all named defendants, and seek an award of compensatory and punitive damages in amounts to be proven at trial.  Virtually all of the conduct which the bank alleges to be objectionable occurred pre-petition with one exception:  the bank allegedly found Adak's September 17, 2009, motion to reject the Aleut lease improper.[29]

Independence Bank filed its first amended complaint for declaratory and other relief on November 6, 2009.[30]  The first amended complaint mirrored the allegations of the original complaint but added Count VI.  This new count alleged breach of contract regarding certain pollock processing equipment against all defendants.  The bank moved to file a second amended complaint on December 8, 2009.[31]  Its proposed second amended complaint was similar to its first amended complaint, but sought to add John Young as a defendant.

---

[29] Complaint (Docket No.1) at 12, ¶ 43.

[30] Docket No. 11.

[31] Docket No. 38.

11

Unlike the previous complaints, however, the bank sought damages of $53,000,000.00 as to all defendants, including Young.  The second amended complaint also contains a specific count alleging breach of fiduciary duty by John Young as an individual.

While reviewing the bank's motion for leave to file a second amended complaint, I noticed that the bank's core proceeding allegations appeared erroneous.  I asked the bank's counsel to provide the court with authority supporting its jurisdictional allegations on January 11, 2010.[32]  The bank submitted a responsive pleading on January 19, 2010.[33]  It asserted that this matter was a core proceeding, with 28 U.S.C. § 157(b)(2)(A) and (O) being the most applicable to the claims it had asserted.[34]  The bank attached a revised second amended complaint to its responsive pleading.  The revised second amended complaint contained new jurisdictional allegations, but did not change the other allegations of the second amended complaint.

John Young, on behalf of himself and defendants Aleutian Spray Fisheries and Pacific Pelagic Group, submitted authorities rebutting the bank's assertion of core jurisdiction.[35]  I found his authorities to be more persuasive.  I determined it inappropriate to go forward with a scheduling and planning conference set for January 20, 2010, and asked Mr. Young to file a motion to dismiss for lack of jurisdiction.  I entered an order vacating the

---

[32] Request of Counsel, entered Jan. 11, 2010 (Docket No. 91).

[33] Bank's Response to Court's Request of Counsel, filed Jan. 19, 2010 (Docket No. 126).

[34] *Id.* at 2.

[35] Aleutian Spray and Pacific Pelagic's Legal Authorities Regarding Core Proceeding, filed Jan. 20, 2010 (Docket No. 128).

hearing and staying all further proceedings until the jurisdictional issue was resolved.[36]  The

order was entered late in the morning of January 21, 2010.  That afternoon, Adak Seafood

filed its cross-claim against Aleut  Enterprise.[37]  The cross-claim contains claims for breach

of contract, specific performance, unjust enrichment, breach of the duty of good faith and fair

dealing, intentional interference with contractual relationships and business expectations,

breach of contract regarding pollock processing, and injunctive and declaratory relief.  It

prays for injunctive relief and damages of $53,000.000.00.

        In addition to the motion to dismiss and the bank's motion for leave to file

second amended complaint, the following substantive motions were pending at the time this

court stayed all further proceedings:  1) Independence Bank's motion to disqualify John

Young as attorney for defendants Aleutian Spray Fisheries and Pacific Pelagic Group,[38]  2)

Aleut Enterprise's motion for summary judgment on its cross-claim and counterclaim,

seeking a declaratory judgment that the lease, which had been assigned to Adak Seafood,

would expire on December 31, 2009;[39] and 3) debtor Adak's motion for summary judgment,

seeking a determination that the court's order authorizing sale of assets in the main

---

[36] Order, entered Jan. 21, 2010 (Docket No. 130).

[37] Adak Seafood's Cross-Claim for Breach of Contract, Specific Performance, Unjust Enrichment
and Declaratory Relief, filed Jan. 21, 2010 (Docket No. 131).

[38] Docket No. 15, filed Nov. 25, 2009.

[39] Docket No. 21, filed Dec. 3, 2009.

13

bankruptcy case mooted all of the bank's claims against it.[40]  The court also takes judicial notice of Adak Seafood, LLC's recently filed adversary proceeding against the debtor, *Adak Seafood, LLC v. Adak Fisheries, LLC*, Adv. No. A10-90005-DMD, filed on February 9, 2010.  In this proceeding, Adak Seafood asserts claims for breach of contract, specific performance, constructive trust, and declaratory relief for the debtor's alleged failures to comply with the terms of the sale order and asset purchase agreement.

Discussion

        Any discussion of bankruptcy jurisdiction must necessarily start with the Supreme Court's landmark decision, *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*.[41]  Northern Pipeline filed for chapter 11 relief in January, 1980.  In March, 1980, the debtor brought an action in the bankruptcy court against Marathon for breach of contract and warranty, misrepresentation, coercion and duress.  Marathon objected to the jurisdiction of the bankruptcy court, contending that the case had to be heard before an Article III judge.  Northern prevailed on the issue in bankruptcy court, but was overturned by the District Court.  The Supreme Court affirmed.  It noted:

> The courts created by the Bankruptcy Act of 1978 do not lie exclusively outside the States of the Federal Union, like those in the District of Columbia and the Territories.  Nor do the bankruptcy courts bear any resemblance to courts-

---

[40] Docket No. 60, filed Dec. 23, 2009.

[41] 458 U.S. 50 (1982).

14

martial . . . Finally, the substantive legal rights at issue in the present action cannot be deemed "public rights." Appellants argue that a discharge in bankruptcy is indeed a "public right," similar to such congressionally created benefits as "radio station licenses, pilot licenses or certificates for common carriers" granted by administrative agencies . . . But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not. Appellant Northern's right to recover contract damages to augment its estate is "one of private right, that is, of the liability of one individual to another under the law as defined."[42]

The court also stated:

Many of the rights subject to adjudication by the Act's bankruptcy courts, like the rights implicated in *Raddatz*, are not of Congress's creation. Indeed the cases before us, which center upon appellant Northern's claim for damages for breach of contract and misrepresentation, involve a right created by *state* law, a right independent and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court.[43]

The Supreme Court went on to find that because the bankruptcy court was not an Article III

court, it had no power to hear the dispute.

---

[42] *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. at 71-72 (citations omitted).

[43] *Id.* at 84.

15

The parallels between *Marathon* and the instant case are undeniable. Independence Bank asserts contract and tort claims, just as Northern Pipeline did. These are private claims for relief which do not arise out of any federally created rights. The bank's claims arise under state law. No federal basis, let alone bankruptcy basis, exists for the claims. As in *Marathon*, these claims arose independent of and antecedent to the debtor's chapter 11 petition.[44]  Further, in *Marathon*, the debtor was the plaintiff in the action, and was seeking to augment the bankruptcy estate. Here, the bank has named debtor Adak as a defendant, and is seeking damages from the estate on account of pre-petition conduct. These claims against the debtor are barred by the automatic stay.[45]

Acts taken in violation of the stay are void.[46]  Accordingly, the bank's complaint is void as to the debtor. What remains is a state law dispute solely between third parties. It is a non-core proceeding. Further, it is not related to the debtor's bankruptcy case. "Related" proceedings include:

> (1) causes of action owned by the debtor which become property of the estate pursuant to 11

---

[44] In this regard, the court notes that to the extent the bank asserted a claim for Adak's "wrongful" attempt to reject the lease with Aleut Enterprise, the claim is moot under the provisions of the order approving the sale of the plant and other assets to Adak Seafood.

[45] 11 U.S.C. § 362(a)(1). As noted above, ¶ 14 of the sale order granted relief from stay with respect to the Aleut Lease. I interpret this phrase to mean that Aleut Enterprise and other parties may utilize their state court remedies regarding the lease. Further, although ¶ 14 of the sale order also specified that relief from stay as to the lease would be without prejudice to the claims asserted herein, this provision cannot be interpreted to validate the merits of those claims, including any claims regarding core jurisdiction. The bank's assertions to the contrary are not persuasive.

[46] *Gruntz v. County of Los Angeles (In re Gruntz),* 202 F. 3d 1074, 1081 (9th Cir. 2000).

16

U.S.C. § 541, and (2) suits between third parties
which have an effect on the bankruptcy estate.[47]

A bankruptcy court's "related to" jurisdiction is not limitless.[48]  It may assert

jurisdiction over non-core claims only if they are also related to the bankruptcy case.[49]  The

bank's causes of action are not owned by the debtor, nor are they property of the bankruptcy

estate.  Further, the claims the bank has asserted against the non-debtor defendants will have

no impact on the bankruptcy estate.  Resolution of this dispute will have no impact on this

bankruptcy proceeding.  A bankruptcy court cannot assert jurisdiction over such a matter.

Independence Bank nonetheless argues that its action is a core proceeding.  Its

argument is rather circular:  (1) the debtor was lessee of the lease at the time the bankruptcy

was filed, so is a necessary party to the declaratory judgment proceeding; (2) in spite of

debtor's business judgment to the contrary, the lease was an extremely unique and valuable

asset of the estate which the debtor failed to take care of; and (3) even though the lease has

now been transferred by the debtor to Adak Seafood, LLC, in accordance with the terms of

a court approved sale and *subject to* the claims asserted in this adversary proceeding, the

debtor must still remain in the case and this case is a core proceeding.

The bank correctly notes that the sale order preserved its claims, but is

attempting to pin the liability for the claims on the wrong party.  The landscape changed

---

[47] *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 n.5 (1995).

[48] *Celotex*, 514 U.S. at 308.

[49] 28 U.S.C. § 157(c)(1).

when the court approved the sale to Adak Seafood, LLC, and the debtor is now out of this picture. The lease was transferred to Adak Seafood, LLC, subject to the claims asserted here.[50] And, as specified in the sale order, the plant itself was sold to Adak Seafood subject to the liens of the bank. The debtor has no remaining liability on the bank's secured claims. The pre-petition breach of contract and tort claims the bank has asserted against the debtor are stayed and, as to those claims, the bank is limited at this point to filing a proof of claim in the main bankruptcy case.

The bank claims core jurisdiction exists under 28 U.S.C. § 157(b)(2)(A), (K) and (O). Examining its claims against the remaining defendants, however, it is clear that none of these subsections apply. The bank's contract and tort claims do not depend on the Bankruptcy Code for their existence and could proceed in a forum other than the bankruptcy court. As such, they are not core proceedings.[51] The claims are not matters which concern the administration of the bankruptcy estate, as required under § 157(b)(2)(A). Nor do the claims affect the liquidation of estate assets or the adjustment of debtor-creditor relationships, as provided in § 157(b)(2)(O). The Ninth Circuit has cautioned that bankruptcy courts should avoid characterizing matters falling within these "catch-all" subsections as core proceedings "if to do so would raise constitutional problems."[52] The Ninth Circuit recently

---

[50] The sale order provided that this transfer was not an assumption and assignment of the lease under § 365.

[51] *Dunmore v. United States,* 358 F.3d 1107, 1114 (9th Cir. 2004).

[52] *Taxel v. Elec. Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1450 (9th Cir. 1990), *citing Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 162 (9th Cir.

18

reiterated this point: "under principles of constitutional avoidance, the otherwise broad 'catchall' provisions of bankruptcy court core jurisdiction should be interpreted narrowly."[53]

28 U.S.C. § 157(b)(2)(K) is also inapplicable here.  Under subsection (K), determinations as to the validity, extent, or priority of liens are core proceedings.  Here, the validity, extent or priority of the bank's liens is not contested.  The assets to which its liens have attached have been transferred out of the estate under the terms of the court-approved sale, and subject to those liens.  Core jurisdiction does not arise under this subsection.

In its various pleadings, the bank has also argued that 28 U.S.C. § 157(b)(2)(I), (M) and (N) apply to its claims to give core jurisdiction.  I respectfully disagree.  Subsection (I) applies to "determinations as to the dischargeability of particular debts."[54]  No dispute regarding dischargeability of a debt has been raised here.

Nor does subsection (M) apply.  This subsection confers core status on "orders approving the use or lease of property, including the use of cash collateral."[55]  There is no court order here approving the lease of property.  The lease that has ignited the current litigation was never assumed by the debtor pursuant to 11 U.S.C. § 365(a).[56]  Further, while

---

1986).

[53] *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 740 (9th Cir. 2009).

[54] 28 U.S.C. § 157(b)(2)(I).

[55] 28 U.S.C. § 157(b)(2)(M).

[56] Such an assumption would have required court approval.

19

there have been orders approving the use of cash collateral in the main case, such orders were entered with the bank's ultimate consent, and these orders are not pertinent to the bank's claims here. Finally, subsection (M) clearly does not implicate an order approving a *sale* of assets. This subsection does not confer core status on the bank's claims for breach of contract and tort.

The same conclusion must be reached under 28 U.S.C. § 157(b)(2)(N). This subsection gives core status to "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate."[57] While there is a stipulated order approving the sale of property in the main case, this order was entered on November 12, 2009, almost one month *after* the bank initiated this adversary proceeding. Further, the sale order rendered moot the bank's contention that the debtor's rejection of the lease in the chapter 11 case would be adverse to the interests of the bankruptcy estate and its creditors. The lease was not rejected. It was transferred, without assumption or rejection under § 365, by the debtor to Adak Seafood, LLC. Subsection (N) does not aid the bank's arguments regarding core jurisdiction.

The claims asserted by Independence Bank in this proceeding are non-core. They are state law contract and tort claims which have no independent basis of federal jurisdiction. The bank's secured debt has been assumed by Adak Seafood, LLC, the purchaser of the plant and transferee of the Aleut Enterprise lease. The debtor no longer has

---

[57] 28 U.S.C. § 157(b)(2)(N).

a stake in either of these assets. The bank's pre-petition claims against the debtor are stayed

pursuant to 11 U.S.C. § 362(a). Its claims as to the other defendants cannot proceed in this

court. The claims are non-core and not related to the bankruptcy case. This court lacks

jurisdiction to consider them.

Adak Seafood, LLC, also opposes dismissal of this proceeding, and contends

it has an independent basis for jurisdiction. It contends the cross-claims it has asserted

against Aleut Enterprise are core proceedings under 28 U.S.C. § 157(b)(2)(N) because they

arise from this court's order approving sale of the debtor's property.[58] Adak Seafood did

acquire the Aleut Enterprise lease pursuant to the sale order, but on close examination of the

cross-claims, it is clear that none of the relief sought implicates the sale order itself. The

transfer of the lease is not in dispute. Instead, the dispute centers around the relative rights

of the lessee, Adak Seafood, and the lessor, Aleut Enterprise, *after* the sale and transfer

occurred.

In its cross-claim, Adak Seafood alleges that since the sale order was entered,

Aleut Enterprise "has taken intentional, willful, reckless and wanton actions to interfere with

Adak Seafood's interests under the Lease, and to prevent or hinder Adak Seafood's use of

the property or operation of its business, and has interfered with Adak Seafood's business

---

[58] Under 28 U.S.C. § 157(b)(2)(N), core proceedings include "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate."

expectancies and contractual relations."[59]  The cross-claim contains five counts.  Count I alleges Aleut Enterprise has wrongfully and willfully breached the lease.  Count II seeks a determination that the lease is a legally valid, binding and enforceable agreement and an order directing specific performance of its provisions by Aleut Enterprise, including exercise of the lease's renewal provisions.  Count III alleges Aleut Enterprise will be unjustly enriched if the lease is not enforced.  Count IV alleges Aleut Enterprise has breached the duty of good faith and fair dealing by taking actions to terminate the lease and interfere with Adak Seafood's business operations.  Count V alleges Aleut Enterprise has intentionally interfered with Adak Seafood's contractual relationships and business expectations.  Count VI alleges Aleut Enterprise has breached provisions of the lease related to a pollock processing line.  Count VII seeks declaratory and injunctive relief to enforce the lease.

In its prayer, Adak Seafood seeks an award of damages in an amount to be determined at trial; a decree of specific performance directing Aleut Enterprise to perform under the lease; an order restraining and enjoining Aleut Enterprise from terminating, rejecting, alienating, etc., the lease; and an award of $53 million (which Adak Seafood purports to be the value of the lease with the pollock agreement ) or of $15 million (the value of the lease without this agreement).  Adak Seafood also asks for recovery of costs and attorney's fees, and such other relief as the court deems proper.

---

[59] Adak Seafood's Cross-Claim for Breach of Contract, Specific Performance, Unjust Enrichment and Declaratory Relief, filed Jan. 21, 2010 (Docket No. 131).

None of the cross-claims involve the sale order, the debtor or the bankruptcy estate. Nor do they involve federal or bankruptcy law. They are, instead, state law claims for breach of contract and tort. Adak Seafood's cross-claim is not a core proceeding under 28 U.S.C. § 157(b)(2)(N).[60] It is a non-core proceeding with no relationship to the bankruptcy case.[61] This court lacks jurisdiction over these claims. However, Adak Seafood will not be deprived of a forum for its claims when this action is dismissed. The court notes that Aleut Enterprise has filed a forcible entry and detainer action against Adak Seafood, which has recently been removed to the United States District Court for the District of Alaska as Case No. 3:10-cv-00017-JWS.[62] The cross-claims which have been asserted by Adak Seafood here can be raised in the District Court Action.

Conclusion

The claims and cross-claims which have been asserted in this proceeding are non-core, state law claims which involve third parties. The claims do not implicate the debtor or the bankruptcy estate. For the reasons stated in this memorandum, this adversary

---

[60] A breach of contract claim which does not challenge the bankruptcy court's order approving a sale of estate assets is not a core proceeding under § 157(b)(2)(N). *Harris v. Wittman*, 589 F.3d at 738.

[61] As with the bank's claims, Adak Seafood's claims are not causes of action owned by the debtor which become property of the estate, nor are they third party claims which will have an effect on the bankruptcy estate.

[62] *Aleut Enterp., LLC v. Adak Seafood, LLC*, 2010 WL 431508 (D. Alaska).

23

proceeding will be dismissed, in its entirety.  An order and judgment of dismissal will be entered accordingly.

DATED:  February 16, 2010

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  A. Willig, Esq.
        C. Mulhearn, Esq.
        M. Wilhelm, Esq.
        C. Christianson, Esq.
        J. McDowall, Esq.
        M. Mills, Esq.
        D. von Kallenbach, Esq.
        J. Young, Esq.
        M. Scheer, Esq.
        J. Kettrick, Esq.
        Hon. John W. Sedwick (courtesy copy re *Aleut Enterp., LLC v. Adak Seafood, LLC*,
                USDC Case No. 3:10-cv-00017-JWS)

2/16/10